William N. KNIGHT and J.T.
Attaway, Plaintiffs,

v.

UNITED STATES of America; Roscoe L.
Egger, Jr., Commissioner of Internal
Revenue; Michael J. Murphy, District
Director of Internal Revenue, South-
east Region; and James Pearce, Super-
visor, Columbus Office, Internal Reve-
nue Service, Defendants.

Civ. A. No. 84–53–COL.

United States District Court,
M.D. Georgia,
Columbus Division.

Aug. 28, 1984.

Jerry D. Sanders, Columbus, Ga., for plaintiffs.

Gerald B. Leedom, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS COUNTS II AND III OF PLAINTIFFS' COMPLAINT

ELLIOTT, District Judge.

Before the Court are motions filed on behalf of the United States and the three individual defendants to dismiss the damage claims contained in Counts II and III of the Complaint.[1]

### A. *Background and History of the Litigation*

The plaintiffs filed this action on March 27, 1984, seeking injunctive relief and money damages against the United States and three individual officials of the Internal Revenue Service. The case arose out of the plaintiffs' activities in "discounting" Federal income tax refunds of individual taxpayers and the refusal of the Internal Revenue Service to honor the related assignments by the individual taxpayers of those claimed refunds.

In its simplest form, the discounting of a Federal tax refund involves a transaction by which an individual taxpayer receives from the discounter a cash payment equal to some percentage of the tax refund shown due on the face of the tax return. The tax return is then forwarded to the appropriate service center for filing, accompanied by a "power of attorney" form or other indication that the refund check is to be forwarded to an address designated by the discounter.[2] The discounter is to receive the refund check, thus ensuring his control over the proceeds and his ability to enforce the original assignment of the refund.[3]

This case was commenced after the plaintiffs were informed by the District Director for the Atlanta District that, consistent with the Anti-Assignment of Claims Act, 31 U.S.C. § 3727, and Treasury Regulation § 601.506(b), the Internal Revenue Service would not divert the individual refund checks to the discounters, but would instead take action to direct the refund checks to the individual taxpayers. In their Complaint, the plaintiffs allege that they had been informed by Internal Revenue Service employees that the discounting of income tax refunds was not prohibited by law and that, pursuant to the "advice, guidance and recommendations supplied to them by Defendant Pearce and other officers and agents of the Internal Revenue Service," they commenced discounting Fed-

---

1. The injunctive claims set forth in Count I were dismissed by an Order entered May 15, 1984, unofficially reported at 54 A.F.T.R.2d para. 84–5078. 596 F.Supp. 540.

2. A variant of this format is described in the opinion in *Kercher v. United States,* 409 F.2d 814 (8th Cir.1969).

3. The plaintiffs' memorandum in opposition to the Government's Motion to Dismiss Count I (p. 7) appears to acknowledge that the individual taxpayers whose refunds were discounted had purported to assign the refunds to one or the other of the plaintiffs. The validity of those assignments, as between the private parties thereto, is a question which need not be addressed in this case.

eral income tax refunds. Complaint, para. 4. In the affidavits submitted on behalf of the defendants, it is acknowledged that plaintiff Attaway was advised in late January 1984, concerning the manner in which to complete a power of attorney form to direct mailing of a refund check to an address other than that of the taxpayer. Within a week thereafter, according to the affidavits, plaintiff Attaway was advised that the Internal Revenue Service would not send refund checks to his address.

In their Complaint, the plaintiffs requested temporary, preliminary and permanent injunctive relief requiring the Internal Revenue Service to forward to them the refund checks of the individual taxpayers with whom they had dealt. Complaint, Count I. In Counts II and III, the plaintiffs sought money damages from the United States, the Commissioner of Internal Revenue, the Atlanta District Director and the Columbus, Georgia group manager of the Examination Division. Specifically, in Count II, the plaintiffs seek damages from the United States and the three officials joined as defendants, in the amounts of $259,743.04 for plaintiff Attaway and $137,845.17 for plaintiff Knight, together with exemplary damages. Count II is premised on an alleged "conspiracy" of the individual defendants. In Count III, the plaintiffs seek the sum of $500,000 from each individual defendant for alleged "libel and slander." Compl. para. 18. The slander and libel are described in paragraph 15 of the Complaint as consisting of "the individual Defendants" having allegedly accused one or both of the plaintiffs of wrongdoing. Further, it is alleged that the individual defendants have "implied" that the plaintiffs were "crooks" and "stated that the practice of discounting Federal Income Tax Refunds was prohibited by law."

B. *Jurisdiction over the claims against the individual defendants*

In the plaintiffs' Complaint, jurisdiction is said to rest on "the status of the defendants being the United States of America and officers of an agency thereof" and the fact that the amount in controversy exceeds the sum of $10,000. Compl., para. 3. No other basis for jurisdiction is alleged.

The Federal District Courts of the United States are not courts of general jurisdiction; rather, they have jurisdiction only as Congress has provided by statute. See *McQueary v. Laird,* 449 F.2d 608 (10th Cir.1971). "There is no general statutory jurisdiction over actions against federal officers, employees and agencies." 449 F.2d at 610. Neither the status of the defendants nor the joinder of the United States as a party is sufficient to confer jurisdiction in this Court over the plaintiffs' action against the officials who are named as defendants.

Nor does 28 U.S.C. § 1331 provide a basis here for "Federal question" jurisdiction over the individual officials. Section 1331 is merely the grant of subject matter jurisdiction over rights and remedies otherwise provided by Federal law; it is not a separate basis for jurisdiction over the common law tort claims raised by these plaintiffs. See *Cox v. IUOE,* 672 F.2d 421 (5th Cir.1982). "The mere fact that a suit is against a federal officer does not support original jurisdiction thereof in the United States District Courts on the ground that it is a case arising under the laws of the United States within the meaning of this section." *Johnston v. Earle,* 245 F.2d 793, 795 (9th Cir.1957) (action against Collector of Internal Revenue and revenue officers). "Nor can jurisdiction be sustained on the ground that the plaintiffs' complaint alleges that defendants may plead in their answer that their acts were within the scope of their authority as federal officers." *Johnston, supra,* 245 F.2d at 795, citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950).

C. *Absolute immunity*

Even if the Court were to find subject matter jurisdiction over the claims against the three Government officials, the plaintiffs' damage actions for alleged common law torts are barred by these officials' absolute immunity from suits of this type.

See *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Butz v. Economou,* 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978).

In *Barr v. Matteo,* the acting director of the Office of Rent Stabilization, charged with libel, was allowed an absolute privilege defense even though the acts complained of were found to be only within the "outer perimeter" of his duties and despite allegations that he acted with malice. See 360 U.S. at 575, 79 S.Ct. at 1341.

In *Butz v. Economou,* the Supreme Court reaffirmed that Government officials charged with tortious acts under state law are covered by absolute immunity, so long as the acts complained of were within the outer perimeter of the scope of their employment. 438 U.S. at 495, 98 S.Ct. at 2905.

The absolute immunity of Federal officers acting within the scope of their employment has been recognized in numerous other cases. See, e.g., *Gonzalez v. Leonard,* 497 F.Supp. 1058, 1067 (D.Conn.1980) (libel and slander action arising out of dissemination of telex message erroneously accusing plaintiffs of devising a plan to kill police officers); *Blatchford v. Guerra,* 548 F.Supp. 406 (S.D.Fla.1982) (claim arising out of verbal and physical assault). As Judge Hand explained in *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949)—

> The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.

See also *Bechtel v. United States Office of Personnel Management,* 549 F.Supp. 111 (N.D.Ga.1982); *Bagwell v. Brannum,* 533 F.Supp. 362, 363 (N.D.Ga.1982) (absolute immunity from liability for assault and battery, citing *Barr v. Matteo* ).

■ Defendants Murphy and Pearce have attached to their motion sworn affidavits concerning their actions and the events leading up to this litigation. Those affidavits are uncontroverted. In any event, it is apparent that the conduct and actions of the individual defendants occurred, if at all, clearly within the scope of their duties and employment. To be within the scope of his employment, it is only necessary that the action of the Federal official bear some reasonable relation to and connection with his duties and responsibilities. *Scherer v. Brennan,* 379 F.2d 609, 611 (7th Cir.1967), cert. denied, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967), cited with approval in *Claus v. Gyorkey,* 674 F.2d 427, 431 (5th Cir.1982). See also *Barr v. Matteo,* 360 U.S. 564, 574–75, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959) (Black, J., concurring). On these facts, there is no basis for denying to any of these defendants the absolute immunity essential to the conduct of their governmental duties.

### D. *Vicarious liability*

■ Apart from these traditional principles of official immunity, to the extent that the plaintiffs seek to recover damages from the Commissioner of Internal Revenue for alleged improper acts of employees and officers of that agency, such an action may not be maintained. The plaintiffs have not alleged that the Commissioner directed, ordered, participated in or approved the alleged wrongful acts. In the absence of such circumstances, a public official is not vicariously liable for the acts of subordinates. *Ford v. Byrd,* 544 F.2d 194 (5th Cir.1976); *McLaughlin v. City of LaGrange,* 662 F.2d 1385 (11th Cir.1981), cert. denied, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982); *Barnstone v. McKeever,* 477 F.Supp. 108, 111 (S.D.Tex. 1979). Vicarious liability will not be visited upon a Federal official for the illegal acts, if any, of his subordinates. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Laswell v. Brown,* 683 F.2d 261 (8th Cir.1982). The same analysis would likewise apply to the other defendants, to

the extent that the plaintiffs' claims are for actions of those defendants' subordinates.

### E. *Jurisdiction over the claims against the United States*

Count II of the Complaint is against the United States, for money damages, based upon the plaintiffs' position that damages, including punitive damages, should be awarded as a result of the alleged conspiracy among the individual defendants. Any analysis of the viability of such a claim must begin with the settled proposition that the United States, as sovereign, is immune from suits for damages, except where Congress, by specific statute, has expressly waived the immunity. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 141, 92 S.Ct. 1456, 1466, 31 L.Ed.2d 741 (1973); *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Alabama*, 313 U.S. 274, 281, 61 S.Ct. 1011, 1013, 85 L.Ed. 1327 (1941); *United States v. Transocean Air Lines, Inc.*, 386 F.2d 79 (5th Cir.1967), cert. denied, 389 U.S. 1047, 88 S.Ct. 784, 19 L.Ed.2d 839 (1968).

The only arguably relevant waiver of immunity here is that set forth in the Federal Tort Claims Act (FTCA) for actionable losses caused by an "act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b).[4] The FTCA exception, however, is unavailable here, for the reason that the plaintiffs have not complied with the jurisdictional prerequisites set forth in 28 U.S.C. § 2675, namely, the prior presentation of their claim to the agency involved.[5]

■■■ The failure of either plaintiff to have filed a proper administrative claim with the Internal Revenue Service precludes commencement of their damage ac-

tion under the FTCA. 28 U.S.C. § 2675(a); *Mack v. Alexander*, 575 F.2d 488 (5th Cir. 1978). "This procedure is jurisdictional and cannot be waived." *Vanderberg v. Carter*, 523 F.Supp. 279, 282 (N.D.Ga.1981) (citing cases). Like any other waiver of sovereign immunity, the limited waiver contained in the FTCA "must be strictly construed. Section 2675 is more than a mere statement of procedural niceties." *Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir.1981). See also *Foyt v. United States*, 561 F.2d 599 (5th Cir.1977); *Molinar v. United States*, 515 F.2d 246 (5th Cir.1975).

### F. *Punitive damages*

■■■ In any event, the plaintiffs' prayer for punitive damages must be disallowed. Awards of punitive damages against the United States are specifically prohibited by the terms of 28 U.S.C. § 2674. See *Vincin v. United States*, 468 F.2d 930, 199 Ct.Cl. 762 (1972).

### G. *Conclusion*

Consistent with the foregoing, the Court determines that the defendants' respective motions to dismiss should be, and hereby are, granted, with the costs of suit taxed against the plaintiffs. Except to the extent that the dismissal of the action against the United States rests upon the plaintiffs' failure to satisfy the jurisdictional prerequisites to suit, this dismissal shall be with prejudice.

---

**4.** The jurisdictional grants in 28 U.S.C. § 1346(a)(1) and (a)(2) are inapplicable on their face. They relate, respectively, to tax refund suits and cases in which the amount in controversy does *not* exceed $10,000.

**5.** Whether the plaintiffs have stated a claim which, if proven, would render the United States liable under the FTCA is a question which need not be addressed at this stage.